IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF VIRGINIA

Richmond Division

UNITED STATES OF AMERICA,

v.                                                                     Civil No. 3:21cr144 (DJN)

JAMES ANTHONY SHAW, II,
     Defendant.

**MEMORANDUM OPINION**
**(Denying Motion for *Franks* Hearing)**

This matter comes before the Court on Defendant James Anthony Shaw's, II, Motion for

Evidentiary Hearing Pursuant to *Franks v. Delaware* and to Suppress Evidence, moving to hold

an evidentiary hearing pursuant to *Franks v. Delaware*, 438 U.S. 154 (1978) and to suppress the

evidence that law enforcement found after executing a state search warrant, including all fruits

flowing therefrom. (Mot. (ECF No. 26).)  For the reasons set forth below, the Court hereby

DENIES Defendant's Motion for a *Franks* hearing and his related Motion to Suppress.

## I.    BACKGROUND

### A.    Factual Background

On March 17, 2021, Defendant failed to appear for a hearing in the Superior Court for the

District of Columbia on a charge of unlawful possession of a firearm, and the presiding judge

issued a bench warrant for his arrest.  (Mot. at 1; Resp. to Def.'s Mot. for Disc. ("Resp.") at 1

(ECF No. 29).)  On March 22, 2021, D.C.-based Deputy United States Marshal Joshua Dowdle

investigated Defendant's whereabouts using law enforcement databases.  (Mot. at 1-2).  Deputy

Dowdle found Defendant's last known address on Windomere Avenue in Richmond, Virginia,

and found a gold 2004 Porsche Cayenne associated with Defendant.  (Mot. at 2.)  Additionally,

Deputy Dowdle's searches revealed that Defendant had registered the 2004 Porsche Cayenne at his mother's address, 5430 Montbrook Circle, Apartment G, in Richmond, Virginia, where Defendant resided from March 2020 through February 2021. (Resp. at 2.) Defendant had owned the 2004 Porsche Cayenne when the Henrico and Richmond Police Departments previously arrested him in January 2020. (Resp. at 2.)

The D.C. Marshals informed the Richmond Marshals of this information about Defendant, and Richmond Deputy Marshal Aaron Rhodenizer began to gather information about Defendant's location. (Resp. at 2.) Deputy Rhodenizer spoke to the Montbrook Circle property management, who told him that they had seen Defendant there and that he often sped through the apartment complex in his car. (Resp. at 2.)

During June 2021, Henrico Police Department officers conducted surveillance at the Montbrook Circle residence while investigating Defendant for state crimes. (Resp. at 2.) While there, Henrico officers observed a gold Porsche Cayenne parked at the complex with temporary tags registered to another of Defendant's vehicles. (Resp. at 2.) Henrico officers informed Deputy Dowdle, who then relayed this information to Deputy Rhodenizer. (Resp. at 2.)

On June 30, 2021, law enforcement also discovered a Virginia Department of Motor Vehicles document that listed a phone number ending in 9229 for Defendant, the same number that Defendant used to call into a D.C. court hearing in February 2021. (Mot. at 2.) Using that number, Deputy Dowdle applied for and received a pen-register trap and trace warrant in the D.C. Superior Court. (Mot. at 2.) This warrant authorized the D.C. Marshals to procure GPS location data, subscriber information and pen register information for Defendant's cell phone. (Resp. at 3.) Deputy Rhodenizer could also receive alerts regarding the location of Defendant's phone. (Resp. at 3.) From June 30, 2021 to July 7, 2021, the GPS location data showed the

2

phone's location near Montbrook Circle. (Resp. at 3; Mot. Ex. B, Report of Spencer J. McInvaille ("McInvaille Report") at 4-18 (ECF No. 30-10).)

Then, on July 6, 2021, Deputy Rhodenizer received a lead regarding Defendant's whereabouts. (Mot. at 2.) Information that Deputy Dowdle had gathered from the U.S. Marshals' technical operations group ("TOG"), which provides surveillance and intelligence information, suggested that Defendant was traveling between his mother's residence at 5430 Montbrook Circle, Apartment G, in Richmond, Virginia, and another address in Richmond. (Mot. at 2 n.3, 2-3.)

That same day, Deputy Rhodenizer conducted surveillance over the course of a few hours outside of 5430 Montbrook Circle while parked in an undercover work van. (Mot. at 3.) He reported that he saw Defendant leave the building containing his mother's apartment and drive away in a 2015 Porsche Cayenne. (Mot. at 3.) Ten minutes later, he saw Defendant return and go back into the building. (Mot. at 3.) An hour later, Deputy Rhodenizer saw Defendant and another man whom he believed to be Defendant's brother, Delorian Shaw, emerge from the building. (Mot. at 3.) Deputy Rhodenizer observed Defendant with an AR-15 rifle in his right hand with a loaded semi-transparent magazine. (Mot. at 3; Resp. at 3.) Defendant looked toward Deputy Rhodenizer as he sat in the work van, then Defendant and his brother got into the 2015 Porsche Cayenne and pulled in front of the 5430 apartment building. (Resp. at 3.) Next, Defendant got out of the car and walked into the breezeway of the building. (Resp. at 3.) Thirty seconds later, Defendant got back into the car, drove in front of Deputy Rhodenizer's van and stopped. (Resp. at 3.) Either Defendant or his brother rolled down the passenger-side window of Defendant's car, and they both looked in Deputy Rhodenizer's direction, smiled and drove away. (Resp. at 3-4.)

That evening, Deputy Rhodenizer applied for a state search warrant. (Mot. at 3.) He also enlisted assistance from the Virginia State Police SWAT Team to arrest Defendant, because Defendant had a firearm. (Resp. at 4.) In support of his warrant application, Deputy Rhodenizer filed the Virginia affidavit for search warrant form. (Reply Ex. A-1, Aff. for Search Warrant ("Aff.") (ECF No. 30-2).) Item 2 of that affidavit called for a description of "[t]he place, person, or thing to be searched is described as follows [ ] and is a place of abode." (Aff. at 1.) There, Deputy Rhodenizer wrote:

> 5430 Montbrook Circle, Richmond VA 23227 Apt G, is located in Henrico County. The residence to be searched is a three story apartment complex with the residence being on the third floor. The dwelling has a green door with the letter "G" placed on the door. The numbers 5430 are located on the front exterior of the apartment complex.
>
> 2015 Porsche cayenne, VA Temporary Registration 42677C VIN # SALWR2VF0FA622795.

(Mot. at 3-4 (alterations in original).)

Item 4 of the affidavit required the affiant officer to state "[t]he material facts constituting probable cause that the search should be made." (Aff. at 2.) In this section, Deputy Rhodenizer stated:

> On March 17, 2021, a warrant was issued for James Anthony Shaw for Failure to appear on a[n] Unlawful Possession of a Firearm. Your affiant conducted surveillance at 5430 Montbrook Circle, Richmond VA 23227 and observed James Shaw exit the residence on two separate occasions. On one of those occasion (sic), James Shaw was observed carrying, what appeared to be a loaded rifle, from the residence and get into a 2015 Porsche Cayenne. James Shaw resides at 5430 Montbrook Circle Apt G with his mother and electronic devices have [put][1] Mr. Shaw at this address. James Shaw has also been seen coming and going from this residence by other law enforcement agencies. Other open investigations reveal that Shaw has been illegally purchasing and transporting firearms across state lines.

---

[1]     The affidavit actually said "but"; however, the parties agree that this was a scrivener's error and the intended word was "put." (Mot. at 4; Resp. at 9.)

(Mot. at 4.)

Item 7 of the affidavit instructed the affiant officer to describe how he came to know the information in the affidavit.  (Mot. at 4.)  There, Deputy Rhodenizer checked the box that read, "I have personal knowledge of the facts set forth in this affidavit . . . ."  (Mot. at 4 (cleaned up).)  Additionally, he noted that "he had sixteen years of law enforcement experience and that he [had] executed several search warrants, made numerous arrests, and conducted physical and electronic surveillance on numerous fugitive cases."  (Mot. at 4.)

The next day, July 7, 2021, Deputy Rhodenizer, other Marshals and members of the Virginia State Police executed the warrant.  (Mot. at 4.)  During the search of Defendant's mother's residence, law enforcement found four people — Defendant, Defendant's mother, a minor child and Defendant's brother.  (Mot. at 5; Resp. at 4.)  Officers apprehended Defendant as he came out of the rear bedroom of the apartment.  (Resp. at 4.)  In that bedroom, in plain view, law enforcement discovered a Palmetto PA-15 rifle, which resembled the rifle that Deputy Rhodenizer had seen Defendant carrying the previous day, and a Glock 10 mm pistol.  (Resp. at 4.)  Additionally, they seized one 9 mm bullet, a rifle magazine with 26 rounds, .45 caliber bullets, three empty magazines, one box of .38 bullets and one Glock 10 mm magazine with 10 rounds from the residence, as well as one box containing one .10 mm round and an extended pistol magazine from the 2015 Porsche Cayenne.  (Mot. at 5.)

Later, officers read Defendant his *Miranda* rights, and Defendant executed a rights waiver form.  (Resp. at 4.)  Defendant then admitted that the handgun belonged to him.  (Resp. at 4.)

### B.      Procedural History

On December 7, 2021, the Grand Jury returned an Indictment charging Defendant with one count of unlawful and knowing possession of a firearm, namely, the 10 mm Glock pistol and accompanying ammunition, that had been shipped and transported in interstate commerce, in violation of 18 U.S.C. § 922(g)(1).  On March 4, 2022, Defendant moved for a *Franks* hearing and to suppress the evidence that law enforcement collected during the execution of the search warrant and Defendant's statements thereafter.  (Mot. at 1.)  On March 15, 2022, the Government responded to this Motion, and on March 16, 2022, Defendant replied (Reply (ECF No. 30)) and submitted a proffer of evidence, rendering the Motion ripe for review.[2]

## II.      STANDARD OF REVIEW

"An accused is generally not entitled to challenge the veracity of a facially valid search warrant affidavit." *United States v. Allen*, 631 F.3d 164, 171 (4th Cir. 2011).  But, "[i]n *Franks v. Delaware*, 438 U.S. 154 (1978), the Supreme Court held that in certain narrowly defined circumstances a defendant" can make such an attack. *United States v. Colkley*, 899 F.2d 297, 300 (4th Cir. 1990).  Recognizing a "strong 'presumption of validity with respect to the affidavit supporting the search warrant,'" the *Franks* Court fashioned a rule of "limited scope." *Id.* (quoting *Franks v. Delaware*, 438 U.S. at 167, 171).  Thus, *Franks* offers a narrow opportunity for a defendant to challenge a presumptively valid warrant by protecting "against omissions that are designed to mislead, or that are made in reckless disregard of whether they would mislead, the magistrate." *United States v. Haas*, 986 F.3d 467, 474 (4th Cir. 2021).

---

[2]      Defendant improperly submitted his proffer in his Reply instead of with his Motion, as should have occurred.  As a result, Defendant denied the Government an opportunity to challenge his proffer.  Despite this procedural error, the Court will accept Defendant's proffer, as it does not impact the Court's resolution of the motion.

6

In particular, a defendant must make a "substantial preliminary showing" that (1) law enforcement made "a false statement"; (2) the false statement was made "knowingly and intentionally, or with reckless disregard for the truth"; and (3) the false statement was "necessary to the finding of probable cause." *United States v. Moody*, 931 F.3d 366, 370 (4th Cir. 2019) (citations omitted).

For the first element, falsity, a defendant must set forth more than a conclusory showing, and he must include "a detailed offer of proof." *Colkley*, 899 F.2d at 300 (citing *Franks*, 438 U.S. at 171). The defendant cannot simply allege a "subjective disagreement" with how law enforcement characterized the facts in its affidavit. *Moody*, 931 F.3d at 370.

Under the second prong, intentionality, to show that law enforcement made false statements or omitted information in the affidavit, the defendant must provide facts to support his assertion. *Id.* at 371. This prong necessitates proof of the affiant officer's "intent to mislead, or . . . reckless disregard for whether the statements would mislead, the magistrate." *Id.* "An innocent or even negligent mistake by [an] officer will not suffice." *Id.* (citing Franks, 438 U.S. at 170). Indeed, the Fourth Circuit has made clear the high standard for establishing reckless disregard in this context:

> . . . reckless disregard in the *Franks* context requires a showing that the affiant personally recognized the risk of making the affidavit misleading. What the officer-affiant *should* have known does not matter if he did not *in fact* know. Reckless disregard is a subjective inquiry; it is not negligence nor even gross negligence. To establish a *Franks* violation, the particular affiant must have been subjectively aware that the false statement or omission would create a risk of misleading the reviewing magistrate judge and nevertheless chose to run that risk.

*United States v. Pulley*, 987 F.3d 370, 377 (4th Cir. 2021) (internal citations omitted).

In addition to affirmative false statements, the Fourth Circuit has extended *Franks* to intentional or reckless omissions from affidavits. *Colkley*, 899 F.2d at 300-02. But importantly,

7

the Fourth Circuit has made clear that "[w]hen a defendant relies on an omission, this heavy burden is even harder." *Haas*, 986 F.3d at 474. The court cautioned that "the affirmative inclusion of false information in an affidavit" would more likely invalidate a warrant than would an omission, for "[a]n affiant cannot be expected to include in an affidavit every piece of information gathered in the course of an investigation." *Id.* at 300-01.

Thus, to satisfy this prong as it applies to omissions, a defendant must show that the omissions were "*designed to mislead*" or were made with "*reckless disregard of whether they would mislead*," the magistrate. *Id.* at 301 (citing *United States v. Reivich*, 793 F.2d 957, 961 (8th Cir. 1986)). This required showing imposes a higher burden on a defendant "making claims of omissions rather than affirmative false statements." *United States v. Clenney*, 631 F.3d 658, 664 (4th Cir. 2011) (citing *United States v. Tate*, 524 F.3d 449, 454-55 (4th Cir. 2008)). Specifically, "[a]n officer acts with reckless disregard when she fails to inform the magistrate of facts she subjectively knew would negate probable cause. And the mere fact that information was omitted from an affidavit cannot alone show recklessness or intentionality." *Haas*, 986 F.3d at 475.

Third, and finally, the defendant must demonstrate materiality, meaning that the offending information must be necessary for the existence of probable cause. *Franks*, 438 U.S. at 171-72. To make this determination, courts consider the totality of the circumstances. *Colkley*, 899 F.2d at 301 (citation omitted). The materiality prong serves *Franks*' ultimate goal: "to prevent the admission of evidence obtained pursuant to warrants that were issued only because the issuing magistrate was misled into believing that there existed probable cause." *Moody*, 931 F.3d at 371 (citation omitted).

If the defendant furnishes a "substantial preliminary showing" that satisfies these three factors, then the court must hold a *Franks* hearing to develop the evidence on the sufficiency of the affidavit. *Haas*, 986 F.3d at 474. After the hearing, if the defendant establishes these prongs by a preponderance of the evidence, "the search warrant must be voided and the fruits of the search excluded." *Franks*, 438 U.S. at 156.

### III.   ANALYSIS

Here, Defendant argues that the Court should hold a *Franks* hearing, asserting that Deputy Rhodenizer made false statements and omitted key information from the search warrant affidavit. Although the Court finds that the warrant affidavit bears multiple careless errors, it cannot say that these errors establish recklessness or materiality. Thus, the Court will deny Defendant's Motion for a *Franks* hearing, as explained below.

#### A.   Alleged False Statements

#### 1.   Item 2 of the affidavit.

Defendant initially points to the description of the place to be searched in Item 2 as containing errors. Specifically, Defendant asserts that Apartment G was on the second, not the third floor, of the 5430 building, and that the color of the door for Apartment G was black, not green. (Mot. at 9.) He also highlights that the VIN number for the Porsche Cayenne listed in the search warrant affidavit did not match the year, make or model of the vehicle that Deputy observed during his surveillance or that law enforcement ultimately searched. (Mot. at 9-10.) Neither of these alleged errors invalidate the warrant. Deputy Rhodenizer otherwise correctly provided the address and vehicle description, enabling law enforcement to search the correct apartment and vehicle. *See United States v. Owens*, 848 F.2d 462, 466 (4th Cir. 1988) (rejecting challenge to search when affiant provided the wrong apartment number for the apartment

9

searched).  These errors underscore the affidavit's overall sloppiness but do not indicate a reckless disregard for the truth.

### 2.    Item 4 of the affidavit.

Defendant also challenges the accuracy of statements in Item 4 of the affidavit regarding the "[t]he material facts constituting probable cause that the search should be made." (Aff. at 2.) In this section, Deputy Rhodenizer stated:

> On March 17, 2021, a warrant was issued for James Anthony Shaw for Failure to appear on a[n] Unlawful Possession of a Firearm.  Your affiant conducted surveillance at 5430 Montbrook Circle, Richmond VA 23227 and observed James Shaw exit the residence on two separate occasions.  On one of those occasion (sic), James Shaw was observed carrying, what appeared to be a loaded rifle, from the residence and get into a 2015 Porsche Cayenne. James Shaw resides at 5430 Montbrook Circle Apt G with his mother and electronic devices have [put] Mr. Shaw at this address.  James Shaw has also been seen coming and going from this residence by other law enforcement agencies.  Other open investigations reveal that Shaw has been illegally purchasing and transporting firearms across state lines.

As to this section, Defendant asserts that Deputy Rhodenizer falsely stated that:

(1).  Defendant resided at 5430 Montbrook Circle, Apartment G, with his mother at the time of Deputy Rhodenizer's surveillance and search of the apartment;

(2).  Other law enforcement agencies had observed Defendant coming and going from 5430 Montbrook Circle, Apartment G;

(3).  Electronic devices indicated Defendant's location at 5430 Montbrook Circle, Apartment G, when these devices could have only placed him — at best — within 1.12 to 13.44 square miles of the apartment between June 30, 2021, and July 7, 2021; and,

(4).  Defendant did not have a 2015 Porsche Cayenne.

(Mot. at 9-10; Reply at 6.)  The Court will address each challenge in turn.

### a.    *Defendant's residence at Apartment G.*

In support of Defendant's first assertion — that he did not live with his mother at the searched apartment — Defendant relies on an declaration from his investigator, Lee Hush, that

states: "There is no evidence in discovery that Mr. Shaw was residing at his mother's address at 5430 Montbrook Circle, Apt. G after March 2021." (Reply Ex. A ¶ 15 ("Hush Decl.") (ECF No. 30-1).) This assertion does not undermine the veracity of Deputy Rhodenizer's statement about Defendant's residence.  First, neither party disputes that Defendant's mother did, in fact, reside at this location.  Second, both parties acknowledge that Defendant, a fugitive firearms trafficker, had been traveling between multiple residences in D.C. and Richmond, including his mother's apartment.  The Court therefore finds this assertion factually correct, and need not address the intentionality or materiality prongs of the *Franks* test.

### b.      *Law enforcement's observations of Defendant at Apartment G.*

Next, Defendant challenges the veracity of the statement that other law enforcement officers had observed Defendant coming and going from Apartment G.  Here again, Defendant relies on his investigator's declaration, which states, "There is no reference in discovery to other law enforcement agencies seeing Mr. Shaw coming and going from 5430 Montbrook Circle, Apartment G." (Hush Decl. ¶ 4.)

First, the lack of information provided in discovery alone does not establish that this statement was false.  Second, no evidence suggests that Deputy Rhodenizer made this statement with the requisite intent.  In fact, Defendant's proffer included an email from Deputy Rhodenizer to his colleagues that undercuts this contention. (Reply Ex. A-8 ("Rhodenizer Email") (ECF No. 30-9).)  In that email, Deputy Rhodenizer states that during their surveillance of Apartment G, Henrico Police had observed a Porsche Cayenne that they believed that Defendant had been utilizing. (Rhodenizer Email at 2.)  And as stated above, Deputy Rhodenizer knew that Defendant frequently stayed at his mother's apartment.  Consequently, his statement arose from a reasonable interpretation of the facts known to him and the information that Henrico Police had

conveyed to him.  Thus, the Court finds this statement neither false nor made with the requisite intent.

### c.    *The GPS data from Defendant's cellphone.*

In contrast to the first two challenges, the affidavit did incorrectly assert that electronic devices had put Defendant at the address at issue, as the Government concedes. (Resp. at 9-10.) Instead, the GPS data merely placed Defendant in the general vicinity of his mother's residence. Nevertheless, this assertion still does not satisfy *Franks*'s intentionality prong.  Defendant offers no evidence to suggest that Deputy Rhodenizer misstated what the GPS data showed intentionally or recklessly.  Rather, it appears that he simply made an honest mistake in interpreting the data.

Moreover, it still does not satisfy the materiality prong, because the GPS data clearly had no impact on the magistrate's finding of probable cause. *See Moody*, 931 F.3d at 371 ("A district court may not hold a *Franks* hearing where, after stripping away the allegedly false statements, the truthful portions of the warrant application would still support probable cause.").  Deputy Rhodenizer had personally observed Defendant at the Montbrook Circle complex on two separate occasions, obviating the need for GPS data to demonstrate Defendant's presence there. Thus, Court can excise from Deputy Rhodenizer's statement that "electronic devices have [put] Mr. Shaw at this address," and the affidavit would still provide ample grounds for probable cause. *See United States v. Lull*, 824 F.3d 109, 118 (4th Cir. 2016) (setting aside information in affidavit provided by informant for whom material information was omitted); *Moody*, 931 F.3d at 371 ("A district court may not hold a *Franks* hearing where, after stripping away the allegedly false statements, the truthful portions of the warrant application would still support probable cause.").

Furthermore, the good faith exception permitted Deputy Rhodenizer to reasonably rely on the validity of the warrant to execute the search. "The exclusionary rule ordinarily provides that 'evidence obtained in violation of the Fourth Amendment cannot be used in a criminal proceeding against the victim of the illegal search and seizure." *United States v. Thomas*, 908 F.3d 68, 72 (4th Cir. 2018) (citation omitted). In *Leon*, the Supreme Court furnished an exception to that rule, "under which evidence obtained by an officer who acts in objectively reasonable reliance on a search warrant will not be suppressed, even if the warrant is later deemed invalid." *Id.* (citing *United States v. Leon*, 908 F.3d 897, 922 (1984)). A court may consider the facts that the officer knew, but "inadvertently omitted from a warrant affidavit" when making this determination. *Id.* This exception does not apply, however, when an affiant officer committed a *Franks* violation in applying for the warrant. *Leon*, 468 U.S. at 923. Here, Deputy Rhodenizer did not commit a *Franks* violation in erroneously interpreting the GPS data, and the good faith exception applies. Deputy Rhodenizer could rely on the validity of the warrant and his own observations that he had seen Defendant just hours before he applied for the warrant, despite inadvertently omitting the details of his surveillance timeline from the affidavit.

### d.     *The Porsche Cayenne.*

Finally, Defendant argues that he did not have a 2015 Porsche Cayenne, as the warrant affidavit stated, and that the police instead searched a 2003 Porsche Cayenne with a different VIN number to the one listed in the affidavit. Defendant offers no evidence to demonstrate that Deputy Rhodenizer intended to mislead the magistrate by this mistake, or incorrectly described the vehicle with reckless disregard for the truth. Further, the Government indicates that it does not intend to introduce any evidence recovered from the vehicle, mooting the need for a *Franks*

13

hearing on this point.  (Resp. at 10 n.3.).  For these reasons, the Court finds that none of the statements that Defendant challenges merit a *Franks* hearing.

### B.        Alleged Material Omissions

Having determined that the affidavit contains sufficient probable cause to support the issuance of the search warrant, the Court will now turn to Defendant's assertions that Deputy Rhodenizer omitted several key facts from the affidavit.  It bears reiterating that, recognizing that "[a]n affiant cannot be expected to include in an affidavit every piece of information gathered in the course of an investigation," the Fourth Circuit imposed a heightened threshold on defendants seeking a *Franks* hearing on the basis of omissions in warrant affidavits.  *Haas*, 986 F.3d at 475 (alteration in original) (quoting *Colkley*, 899 F.2d at 300-01).  In this context:

> When a defendant relies on an omission [to obtain a *Franks* hearing, their] burden
> is even harder to meet.  In that situation, a defendant must provide a substantial
> preliminary showing that (1) law enforcement made an omission; (2) law
> enforcement made the omission "knowingly and intentionally, or with reckless
> disregard for the truth," and (3) the inclusion of the omitted evidence in the
> affidavit would have defeated its probable cause.

*Id.* at 474 (citations omitted).

To establish the intentionality prong as it applies to omissions from a warrant affidavit:

> [L]aw enforcement must have omitted the information to mislead the magistrate
> judge or in reckless disregard of whether it would be misleading.  An officer acts
> with reckless regard when she fails to inform the magistrate of facts she
> subjectively knew would negate probable cause.  And the mere fact that
> information was omitted from an affidavit cannot alone show recklessness or
> intentionality.

*Id.* at 475.

Against this backdrop, Defendant asserts that Deputy Rhodenizer omitted the following key facts from his search warrant affidavit:

(1).  The 5430 Montbrook Circle apartment building has twelve different apartments;

(2).  During his surveillance, Deputy Rhodenizer could not see the specific apartment from which Defendant came; he only saw Defendant leave the 5430 Montbrook Circle *building*; and,

(3).  The two occasions when Deputy Rhodenizer observed Defendant coming and going from 5430 Montbrook Circle occurred only about an hour apart on the same day.

(Reply at 6.) None of these alleged omissions satisfies the intentionality prong of the *Franks* test, as Defendant offers no evidence to suggest that Deputy Rhodenizer made these omissions intending to mislead the magistrate or with reckless disregard of whether they would mislead the magistrate. Further, as discussed below, they also fail the materiality prongs of the *Franks* test.

First, Deputy Rhodenizer's omission of the number of units located in the apartment building had no impact on the probable cause determination. Deputy Rhodenizer stated in the affidavit that Defendant resided with his mother in "Apt G" and described the building as a "three story apartment complex." (Aff. at 1-2.) The magistrate surely knew that the complex included many different units.

Second, Defendant merely surmises that Deputy Rhodenizer could not see Defendant enter and exit Apartment G. The evidence that he offers on this point again comes from his investigator, who theorizes where Deputy Rhodenizer "would have been parked" based on a photograph that Deputy Rhodenizer took and then extrapolates that Deputy Rhodenizer could not have seen Defendant leave his mother's residence. (Hush Decl. ¶ 6.) However, this speculation fails to establish the falsity of the assertion in the affidavit that Deputy Rhodenizer "observed James Shaw exit the residence on two separate occasions."[3] (Aff. at 2.)

---

[3]      Deputy Rhodenizer used the word "residence" in the application, not "apartment." Because earlier in the same sentence he referred to 5430 Montbrook Circle as the residence, it

Third, Defendant's argument that Deputy Rhodenizer failed to describe the timing of his observations of Defendant entering and exiting the 5430 building holds no water, either. Defendant correctly notes that Deputy Rhodenizer saw Defendant go in and out of the building twice in only one hour. However, Defendant fails to address the fact that these observations occurred mere hours before Deputy Rhodenizer sought the warrant. This timeline rendered it extremely likely that law enforcement would discover Defendant and contraband in his mother's apartment upon execution of the search warrant. The addition of these facts in the warrant affidavit, therefore, would have only strengthened the magistrate's probable cause finding.

The omissions discussed above likely resulted from the rapidly unfolding investigation into Defendant's activities. "[W]arrant affidavits are 'normally drafted by nonlawyers in the midst and haste of a criminal investigation.'" *Moody*, 931 F.3d at 372 (quoting *United States v. Ventresca*, 380 U.S. 102, 108 (1965)). Courts must interpret warrant applications using common sense and cannot compare them "to the standard of what judges or lawyers feel they would have written if given the opportunity." *Id.* (citing *United States v. Harris*, 403 U.S. 573, 579 (1971)). And, as the Government correctly highlights, suppression constitutes a "last resort" meant for the "sole purpose" of deterring future Fourth Amendment violations. *Davis v. United States*, 564 U.S. 229, 236-37 (2011). A court should suppress evidence only when the benefits of suppression would outweigh the "heavy costs" of deterrence. *Id.*

---

appears that he meant the building, not the specific apartment. The Government interprets the language in this manner (Res. 3, 13), as does the Court. However, Defendant interprets the word "residence" as used by Deputy Rhodenizer in the application to refer to his mother's apartment. (Reply at 6). However, under either interpretation, the Court finds no material omission, as the point being made by Deputy Rhodenizer to the magistrate was that, based on his own observations, he had reason to believe that Defendant was staying with his mother. Moreover, *Franks* forbids courts from engaging in word-parsing exercises. Instead, *Franks* serves to deter misconduct by law enforcement officers who apply for search warrants. The Court finds no misconduct here.

Here, state and federal law enforcement had been investigating Defendant, an alleged fugitive firearms trafficker, for months. Law enforcement knew that Defendant was traveling between D.C. and Richmond, and officers needed to apprehend him quickly. This context certainly serves to explain the affidavit's overall sloppiness and demonstrates that Deputy Rhodenizer's omissions resulted from mere negligence, not an intent to mislead the magistrate or recklessness. In short, the alleged omissions fall far short of the heavy burden that a defendant must satisfy to obtain a *Franks* hearing. Consequently, Defendant's motion fails.[4]

## IV.    CONCLUSION

For the reasons set forth above, the Court hereby DENIES Defendant's Motion for a *Franks* hearing and related request to suppress evidence. (ECF No. 26).

An appropriate Order shall issue.

Let the Clerk file a copy of this Memorandum Opinion electronically and notify all counsel of record.

It is so ORDERED.

_____/s/_____

David J. Novak
United States District Judge

Richmond, Virginia
Date: April 18, 2022

---

[4]      Defendant also argues that the warrant affidavit relied on stale facts, because Deputy Rhodenizer stated that the D.C. Superior Court issued a warrant for Defendant's arrest on March 17, 2021, but did not specify the time frame during which he conducted surveillance after the issuance of the bench warrant. (Mot. at 12-13.) For that reason, Defendant contends, up to four months could have elapsed between the bench warrant's issuance and Deputy Rhodenizer's surveillance. (Mot. at 13.) However, even though he did not state it in the application, Deputy Rhodenizer observed Defendant at the location only hours before seeking the warrant. Thus, the Court declines to find the evidence underlying the affidavit stale.